**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NOVO NORDISK A/S, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MAI KAGA, MD LLC a/k/a THE KAGA ACADEMY OF AESTHETIC & CONCIERGE MEDICINE,<br><br>                    Defendant. | Civil Action No. 25-267 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Mai Kaga, MD LLC a/k/a The Kaga Academy of Aesthetic & Concierge Medicine's ("Defendant") Motion to Dismiss (ECF No. 13) Plaintiffs Novo Nordisk A/S and Novo Nordisk Inc.'s (collectively, "Novo Nordisk" or "Plaintiffs") Complaint (ECF No. 1). Plaintiffs opposed (ECF No. 15), and Defendant replied (ECF No. 16).[1] The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons outlined below, the Court denies Defendant's Motion to Dismiss.

## I.      BACKGROUND[2]

Novo Nordisk is a pharmaceutical company that manufactures three Food and Drug Administration ("FDA") approved medications for the treatment of diabetes and chronic weight

---

[1] The parties further submitted notices of supplemental authority for the Court's consideration. (*See* ECF Nos. 17, 18, 19, 20.)

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

management: (1) Ozempic; (2) Wegovy; and (3) Rybelsus. (Compl. ¶¶ 1-2, ECF No. 1.) Each of these drugs is prescription-only and contains semaglutide as its active ingredient. (*Id.* ¶¶ 2, 30.) Novo Nordisk is currently the only company in the United States that manufactures FDA-approved medications containing semaglutide, and the FDA has not yet authorized any generic versions of semaglutide-based drugs. (*Id.* ¶¶ 3, 5, 39.) Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®. (*Id.* ¶ 4.)

While no generic versions of semaglutide medicines have been approved by the FDA, certain companies have created "compounded drugs" purportedly containing semaglutide as an active ingredient.[3] (*Id.* ¶¶ 34-35.) Compounded drugs, however, are not FDA-approved, and are not evaluated by the FDA for their safety, effectiveness, or quality. (*Id.* ¶ 36.) Novo Nordisk alleges that the processes used to produce most semaglutide in compounding is "fundamentally different" than those used to produce semaglutide in Plaintiffs' FDA-approved medicines. (*Id.* ¶ 39.) For example, while Novo Nordisk produces its medications using yeast cells under a "closely controlled multistep process that uses recombinant DNA technology," most compounded semaglutide products are manufactured via chemical synthesis. (*Id.*) Novo Nordisk alleges that the fundamental differences between these processes have resulted in "new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues" in tested samples of compounded semaglutide. (*Id.*) In response to companies that purport to sell products containing

---

[3] Compounding is a process by which a pharmacist or other medical professional alters a medication to meet a patient's specific needs, for example, by combining or mixing the medication with other ingredients. (Compl. ¶ 35.)

semaglutide, the FDA has issued warning letters noting that Ozempic and Wegovy are the only injectable semaglutide products approved for use in the U.S. market.[4] (*Id.* ¶ 5.)

Defendant is a health clinic that purports to offer a compounded semaglutide medication for weight loss. (*Id.* ¶¶ 16, 45, 51, 57.) Defendant states in its marketing materials that it offers semaglutide, "which is an FDA-approved injection . . . otherwise known as Ozempic, Wegovy, or Rybelsus." (*Id.* ¶ 51; *see also id.* ¶ 57 ("We offer Semaglutide aka Ozempic/Wegovy/Rybelsus with custom weekly dosing."); *see also id.* ¶ 49 ("Thankfully, the FDA has approved semaglutide as an acceptable aide when trying to slim down your figure.").)

Novo Nordisk alleges that Defendant's representations are false and misleading because there is no generic version of semaglutide that is FDA-approved, and the only three medications containing semaglutide that are FDA-approved are Ozempic, Wegovy, and Rybelsus, each of which possesses a unique safety and efficacy profile. (*Id.* ¶¶ 5, 29, 50, 52.) Novo Nordisk further alleges that Defendant's false representations "mislead customers" into believing, incorrectly, that the semaglutide product Defendant offers "has been reviewed and approved by the FDA for safety and effectiveness," and that Defendant's drugs are equivalent to, or as effective as, Ozempic, Wegovy, and Rybelsus. (*Id.* ¶¶ 18, 53.)

Novo Nordisk brings this action against Defendant, asserting three causes of action: (1) unfair competition and false advertising in violation of Section 43(a)(1)(B) of the

---

[4] The FDA has also issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that: (1) "compounded drugs are not FDA approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported." (Compl. ¶ 43.)

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ("Count One"); (2) unfair competition in violation of common law ("Count Two"); and (3) unfair competition in violation of N.J. Stat. Ann. § 56:4-1, *et seq.* ("Count Three"). (*See generally* Compl.) Defendant moves to dismiss Plaintiffs' claims. (ECF No. 13.) Defendant's Motion to Dismiss is ripe for review.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint on three grounds: (1) Plaintiffs fail to demonstrate Article III standing; (2) Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"); and (3) Plaintiffs fail to state a claim for false advertising or unfair competition under federal, state, or common law. (*See generally* Def.'s Moving Br., ECF No. 13-1.) The Court addresses each argument in turn.

### A.    Article III Standing

Turning first to Defendant's challenge to standing, Defendant argues that Plaintiffs fail to allege an injury in fact because Plaintiffs' allegations of harm are conclusory, insufficient, and improperly made "on information and belief." (Def.'s Moving Br. 26-28.) The Court finds this argument unavailing.

Under Article III, a plaintiff has standing if it has: "(1) suffered an injury in fact[;] (2) that is fairly traceable to the challenged conduct of the defendant[;] and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The injury-in-fact element requires that the party seeking relief "be [it]self among the injured." *Lujan*, 504 U.S. at 562 (internal quotation marks omitted). At the motion to dismiss stage, "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege [ ] some specific, identifiable trifle of injury." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (emphasis omitted) (citation and internal

quotation marks omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation omitted).

Here, Plaintiffs plausibly allege an injury in fact sufficient to confer standing under Article III. Plaintiffs allege that they manufacture and sell the only FDA-approved medicines containing semaglutide, and that Defendant falsely claims or implies that its semaglutide products are generic versions of Plaintiffs' medications, and are FDA approved. (Compl. ¶¶ 3-5, 8, 58.) Plaintiffs further allege that Defendant's representations are directed to the same consumers who purchase Plaintiffs' FDA-approved medicines and are likely to cause confusion regarding the source, FDA approval status, and authenticity of Defendant's products. (*Id.* ¶¶ 9, 53-55.) The Complaint further asserts that consumers who purchase Defendant's products may experience adverse outcomes and mistakenly attribute those experiences to Plaintiffs' FDA-approved medicines, thereby causing injury to Plaintiffs' business reputation. (*Id.* ¶¶ 66-67, 77.)

Such allegations of consumer confusion, loss of goodwill, and reputational harm are sufficient to plead an injury in fact and confer standing under Article III. *See Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*, No. 17-5358, 2018 WL 1169132, at *3 n.7 (D.N.J. Mar. 6, 2018) (holding that a plaintiff had Article III standing to bring Lanham Act claims where it allegedly owned the marks at issue, and defendant's use of the marks caused consumer confusion and harm to plaintiff's reputation and goodwill); *cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

572 U.S. 118, 132 (2014) (Lanham Act injuries are those to "a commercial interest in reputation or sales.").

That certain allegations are pleaded on information and belief does not undermine Plaintiffs' standing at this stage. Where, as here, the alleged harm arises from consumer confusion and marketplace dynamics that will be explored through discovery, Plaintiffs are not required to plead detailed proof of economic loss. *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016) (holding that a plaintiff "may plead allegations based upon information and belief, "so long as he does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible"); *see also G&W Lab'ys, Inc. v. Laser Pharms., LLC*, No. 17-3974, 2018 WL 3031943, at *14 (D.N.J. June 19, 2018) ("[A] plaintiff is not prevented from pleading facts alleged on information and belief when the facts at issue are peculiarly within the defendant's possession, or where the belief is based on factual information that makes the inference of culpability plausible." (citation and internal quotation marks omitted)). Here, Plaintiffs' theory of injury is accompanied by allegations that make their "theoretically viable claim[s] plausible." *See McDermott*, 649 F. App'x at 268; *Emerson Radio Corp.*, 2018 WL 1169132, at *3. Accordingly, Plaintiffs adequately allege an injury in fact sufficient to confer standing under Article III, and Defendant's Motion to Dismiss on this basis is denied.

### B.     FDCA and Preemption

Defendant next argues that Plaintiffs' claims are preempted by the FDCA because Congress vested exclusive authority in the FDA to investigate and enforce violations of the FDCA, and the Complaint improperly seeks to "enforce a federal statute that does not authorize a private right of action." (Def.'s Moving Br. 21.) Specifically, Defendant argues that Plaintiffs' claims are

a thinly veiled attempt to privately enforce the FDCA "under the guise" of federal or state-law claims. (*Id.* at 21-24.) The Court is not so persuaded.

It is undisputed that the FDCA does not provide a private right of action, and that enforcement of the statute is generally committed to the purview of the federal government. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). The absence of a private enforcement mechanism under the FDCA by itself, however, does not preclude claims brought under federal or state statutes for false advertising. *See POM Wonderful LLC v. Coca-Cola Co*, 573 U.S. 102 (2014); *Feldman v. Lederle Lab'ys*, 592 A.2d 1176 (1991).

In *POM Wonderful*, the Supreme Court clarified that the FDCA does not necessarily preclude Lanham Act claims based on false or misleading advertising. *Id.* at 102. In that case, the plaintiff claimed that although the defendant's "pomegranate blueberry" juice comported with FDCA labeling requirements, the defendant's labeling was still misleading because the juice was only .3% pomegranate and 0.2% blueberry. *Id.* at 105. The Court rejected the defendant's argument that the Lanham Act claim was precluded by the FDCA, and held that the FDCA and the Lanham Act "complement each other" with respect to labeling. *Id.* at 119. As the Supreme Court explained, while "[e]nforcement of the FDCA and the detailed prescriptions of its implementing regulations is largely committed to the FDA[,]" the FDA "does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess." *Id.* at 115. Accordingly, a party's compliance with FDA regulations "does not create a ceiling that bars still better protections against

the capacity of the representations to mislead." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 64 (2d Cir. 2016).[6]

Following *POM Wonderful*, many district courts have navigated "the tightrope between permitted and precluded Lanham Act claims," *Hi-Tech Pharm., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1331 (N.D. Ga. 2016), and found that where the Court "is not called upon to make determinations within the exclusive purview of the FDA authority," claims under the Lanham Act or equivalent state statutes are not barred. *JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992 (C.D. Cal. 2014) (collecting cases and holding that a manufacturer's federal and state law claims were not precluded by the FDCA where a defendant competitor made allegedly misleading statements that its products were generics approved by FDA); *Mehl/Biophile Int'l Corp. v. Milgraum*, 8 F. Supp. 2d 434, 441 (D.N.J. 1998), *aff'd*, 192 F.3d 1362 (Fed. Cir. 1999) (noting that a plaintiff may proceed on a New Jersey common law unfair competition claim "so long as the [c]ourt d[oes] not have to interpret or apply the FDCA or the FDA regulations.").

Numerous courts—including those that have addressed Plaintiffs' claims against other defendants purportedly offering similar semaglutide products—have further found that where a defendant allegedly falsely advertises its products as FDA approved, adjudicating a false advertising claim in that context "does not run the risk of encroaching upon FDA jurisdiction." *G&W Lab'ys, LLC*, 2018 WL 3031943, at *11; *Novo Nordisk A/S v. IV Harmony Clinic LLC*, No. 24-2292, ECF No. 18 at 6-8 (M.D. Fla. Apr. 16, 2025) (holding that [p]laintiffs' claims were not precluded by the FDCA where the allegations "d[id] not require the Court to interpret or apply the

---

[6] The New Jersey Supreme Court has similarly analyzed the issue of preemption in the context of the FDA's approval of a prescription drug, and found that state law claims are not preempted by the FDCA where there is "no direct conflict with federal law." *Feldman*, 592 A.2d at 1185; *see also R.F. v. Abbott Lab'ys*, 745 A.2d 1174, 1193 (2000) (discussing *Feldman* and its progeny).

FDCA to determine whether [defendant's] advertising of its semaglutide products was misleading or deceptive"); *Novo Nordisk A/S v. Rapid Weight Loss and Esthetics Ctr., Inc.*, No. 25-446, ECF No. 23 at 6-7 (D.S.C. June 13, 2025) (holding same); *Novo Nordisk A/S v. Ambrose Med. LLC*, No. 24-11541, 2025 WL 2802975 (N.D. Ill. Sept. 30, 2025) (holding same); *Novo Nordisk A/S v. Horizon Health & Weight Loss LLC*, No. 25-45, ECF No. 12 at 8 (E.D. Ky. Oct. 16, 2025) ("Plaintiffs ask the Court to stop [d]efendant from falsely advertising its products with characteristics that only [p]laintiffs' approved medicines have. . . . That is not grounds for preclusion under *POM Wonderful*[.]").

Here, the Complaint contains no allegation that Defendant's products violate the FDCA, and Plaintiffs "do not ask the Court to interpret the safety or legality of Defendant's drugs." *Horizon Health & Weight Loss LLC*, ECF No. 12 at 8. Rather, Plaintiffs' claims are premised on the allegation that Defendant falsely markets its semaglutide products as FDA-approved, when they are not. (*See* Compl. ¶¶ 3-9, 53-55.) Adjudicating the falsity of Defendant's statements as alleged do not require the Court to "make determinations within the exclusive purview of FDA authority." *JHP Pharm.*, 52 F. Supp. 3d at 617. Accordingly, Plaintiffs' claims are not preempted by the FDCA, and Defendant's Motion to Dismiss on FDCA preemption grounds is denied.

**C.     Rule 12(b)(6)**

Finally, the Court addresses Defendant's arguments that Plaintiffs fail to state a claim upon which relief can be granted. (*See* Def.'s Moving Br. 11-20.)

### *1.     False Advertising Under the Lanham Act (Count One)*

To state a claim for false advertising under the Lanham Act, a plaintiff must allege that: (1) "the defendant has made false or misleading statements as to his own product or another's;" (2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;" (3) "the deception is material in that it is likely to influence purchasing

decisions;" (4) "the advertised goods traveled in interstate commerce;" and (5) "there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).[7]

A statement is actionable if it is either: "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." *Groupe SEB*, 774 F.3d at 198 (quotation omitted). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.* (internal quotation marks omitted). When the statements of fact at issue are literally false, actual deception is presumed, and a plaintiff is not required to plead that the consumer was misled. *See Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005); 15 U.S.C.A. § 1125(a). Where a statement is not literally false, the Court must consider whether there is "actual deception or a tendency to deceive." *Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

Here, Plaintiffs adequately plead the elements of a false advertising claim under the Lanham Act. Plaintiffs satisfy the first prong by alleging that Defendant's advertisements are literally false, because Defendant advertises selling "an FDA-approved injection," despite Defendant's semaglutide products not being FDA-approved. (*See e.g.*, Compl. ¶¶ 51-52); *Ambrose*

---

[7] The Court finds Defendant's argument that its advertisements do not constitute "commercial advertising or promotion" for the purposes of the Lanham Act unavailing. (Def.'s Moving Br. 13.) At this stage of litigation, Plaintiffs plausibly allege that Defendant is a competitor who purports to sell semaglutide products, and that Defendant has sufficiently disseminated its advertisements to the relevant purchasing public through the Internet and various social media posts. (*See* Compl. ¶ 18 (alleging Defendant purports to offer medications that are "the same as or equivalent to" Novo Nordisk's medicines)); *see also Am. Outsourcing Sols., LLC v. Banta*, No. 09-2509, 2010 WL 11671857, at *3 (M.D. Pa. June 23, 2010) (concluding it was inappropriate on a motion to dismiss to conclude that the defendant's alleged conduct "[did] not meet the 'commercial advertising and promotion threshold'" without knowing more about the industry at hand).

*Med. LLC*, 2025 WL 2802975, at *2 ("Here, Novo Nordisk has plausibly alleged that [the defendant's] message to consumers is that its compound is FDA approved. That is a false statement, so Novo Nordisk has plausibly alleged that [the defendant's] advertisement is a false statement.") Because Plaintiffs allege a literally false statement, Defendant's advertisements are presumed to have deceived consumers, and Plaintiffs' allegations satisfy the second prong of a false advertising claim. *See Pernod Ricard USA, LLC*, 653 F.3d at 248.

With respect to the third element, Plaintiffs plausibly allege that Defendant's advertisements are material or likely to influence purchasing decisions. Plaintiffs allege that Defendant's false or misleading statements are "likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective." (Compl. ¶ 9.) Such an allegation regarding the "likely" effect of Defendant's conduct on consumers' purchasing decisions is sufficient to plead materiality at this stage. *See CareDx, Inc. v. Natera, Inc.*, No. 19-662, 2019 WL 7037799, at *11 (D. Del. Dec. 20, 2019) ("[C]ourts generally do not require that a plaintiff demonstrate an actual effect on purchasing decisions; rather, a 'likely' effect on consumer choice is sufficient."), *report and recommendation adopted*, No. 19-662, 2020 WL 401773 (D. Del. Jan. 24, 2020); *Telebrands Corp. v. Ragner Tech. Corp.*, No. 16-3474, 2019 WL 1468156, at *4 (D.N.J. Apr. 3, 2019) (finding that the plaintiff sufficiently pled materiality at the motion to dismiss stage where the court "[could not] say that [the] allegedly false advertisements touting a product's high strength would not influence purchase decisions").

As to the fourth element of a false advertising claim, Plaintiffs plausibly plead that Defendant's conduct affected interstate commerce by alleging that Defendant posted its advertisements on Facebook, Instagram, and its own website. (*See* Compl. ¶¶ 50-56); *Hinton v.*

*Sansom Street, Inc.*, No. 20-1515, 2021 WL 1313107, at *5 (E.D. Pa. Apr. 7, 2021) (holding plaintiff plausibly alleged this element where defendants disseminated advertisements through Facebook, Twitter, and Instagram because of "the very nature of the Internet which has potential to reach a worldwide audience" (citing *United States v. MacEwan*, 445 F.3d 237, 244-45 (3d Cir. 2006))). Finally, as the Court explained above, Plaintiffs adequately allege injury to their goodwill and reputation. *See, e.g.*, *Krupa v. Platinum Plus, LLC*, No. 16-3189, 2017 WL 1050222, at *4 (M.D. Fla. Mar. 20, 2017) (finding that the plaintiffs plausibly pled injury for a Lanham Act false advertising claim where the plaintiffs alleged damage to their respective brands, which in turn negatively affected future earning capacity); *Ambrose Med. LLC*, 2025 WL 2802975, at *2.[8] Accordingly, Defendant's Motion to Dismiss Count One is denied.

### 2. *Common Law Unfair Competition (Count Two) and Unfair Competition Under N.J. Stat. Ann. § 56:4-1, et seq. (Count Three)*

"[U]nfair competition claims under New Jersey statutory and common law mirror unfair competition claims under § 43(a) of the Lanham Act'—the elements are the same." *Therabody, Inc. v. Dialectic Distrib. LLC*, No. 23-21995, 2024 WL 3355308, at *8 (D.N.J. July 10, 2024) (quotation omitted); *see also Meenaxi Enter., Inc. v. Shakti Grp. USA LLC*, No. 22-7383, 2023 WL 7181433, at *6 (D.N.J. Nov. 1, 2023) ("It is well established that the elements for an unfair competition claim under [N.J. Stat. Ann. § 56:4-1, *et seq.*] and the common law are identical to those under the Lanham Act.") Because Plaintiffs state a claim for unfair competition under the Lanham Act, they "also state[] a claim for unfair competition under New Jersey common law and

---

[8] Because Plaintiffs have sufficiently pled a false advertising claim in violation of the Lanham Act, the Court also finds that Plaintiffs have alleged sufficient facts to support an unfair competition claim in violation of the same statute. *See NY Mach. Inc. v. Korean Cleaners Monthly*, No. 17-12269, 2018 WL 2455926, at *3 (D.N.J. May 31, 2018) (holding same); *see also id.* ("Unfair competition claims brought under § 43(a) of the Lanham Act generally follow the same analysis as false advertising claims."); *Lexmark Int'l*, 572 U.S. at 136 ("[T]he Lanham Act treats false advertising as a form of unfair competition[.]").

N.J. Stat. Ann. § 56:4-1." *Therabody, Inc.*, 2024 WL 3355308, at *8. Accordingly, Defendant's

Motion to Dismiss is denied as to Counts Two and Three.

IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is denied in its entirety. The

Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED:  December 22nd, 2025